**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/3/2026__
```

-------------------------------------------------------- X
-
Shopnomix, LLC,                                    :          25-CV-8403 (ALC) (KHP)
                                                   :
            Plaintiff,                             :          **ESI PLAN AND ORDER**
                                                   :
            v.                                     :
                                                   :
Vinay Ganti,                                       :
                                                   :
            Defendant.                             :
                                                   X
--------------------------------------------------------
-

**The parties in this action stipulate and agree that the following ESI Plan and [Proposed]**
**Order shall govern the preservation, collection and production of electronically stored**
**information and documents in this action.**

   I.   **Description of Claims/Counterclaims/Cross-Claims**

        Plaintiff:

        Plaintiff Shopnomix, LLC ("Shopnomix") is a performance marketing platform for
        the digital marketplace, offering brand-safe and user-friendly online advertisements.
        In this action, Shopnomix brings claims against its former Senior Vice-President for
        Partnerships & Demand, Defendant Vinay Ganti. Shopnomix's claims arise out of
        Defendant Ganti's unauthorized access to and downloading of files containing certain
        highly valuable Shopnomix trade secrets and other confidential and proprietary
        business information several months after his employment ended. On multiple
        occasions between January 30, 2025 and April 25, 2025, Ganti unlawfully accessed
        this material by using a passkey to access Shopnomix's Google Drive, allowing him
        to improperly bypass entering login credentials (which had been terminated months
        earlier). To further his scheme, he concealed his entry by disabling certain
        notifications which might have alerted Shopnomix about his activities. Shopnomix
        has reason to believe Defendant Ganti disclosed some or all of this confidential and
        highly valuable information to a Shopnomix competitor for his personal gain, in
        violation of his contractual agreement with Shopnomix.

        Accordingly, Shopnomix brings claims against Defendant Ganti for: 1) violation of
        the Defend Trade Secrets Act by misappropriation; 2) violation of the Computer
        Fraud and Abuse Act; 3) common law unfair competition; 4) common law intentional

interference with prospective economic relations; 5) trade secret misappropriation under New York common law; 6) unfair and deceptive trade practices under New York General Business Law § 349; and 7) breach of contract.

Defendant:

Defendant Vinay Ganti ("Defendant") was a former employee of Shopnomix holding the position of Senior Vice-President for Partnerships & Demand. Shopnomix contends that Defendant made unauthorized access to Shopnomix systems and downloaded files containing Shopnomix trade secrets and other confidential and proprietary business information after his employment ended.

Defendant denies that he made any unauthorized access to Shopnomix systems and downloaded files containing Shopnomix trade secrets and other confidential and proprietary business information.

(a)     **Plaintiff's Estimated Monetary Damages and Description of Other Relief Sought:**

Plaintiff's monetary damages are estimated in excess of $4 million. Plaintiff further seeks exemplary damages as well as costs and attorney's fees. Plaintiff further seeks a permanent injunction against Mr. Ganti and any third-party acting in concert with him to, in relevant part, prohibit him from using, disclosing, or disseminating any of Plaintiff's trade secrets or confidential information and retaining any copies, excerpts, or summaries of any such information.

(b)     **Defendant's Estimated Damages on any Counterclaim/Cross-Claims and Description of Other Relief Sought:**

No counterclaims or cross-claims have been filed.

**By signing below, counsel for the parties confirm that they have factored in the potential damages and relief sought in this case, as well as the resources of the parties, to develop an ESI Plan that is proportional to the needs of this case.**

II.    **Meet and Confer.**

Pursuant to Fed. R. Civ. P. 26(f), counsel are required to meet and confer regarding certain matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference).  Counsel hereby certify that they have met and conferred to discuss these issues.

Date of parties' meet-and-confer conference: <u>December 4, 2025</u>

***By signing below, the parties confirm that they have reviewed Judge Parker's Discussion Topics for Rule 26(f) Meeting.***

2

**III.    Preservation.**

    **(a)**    **The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to:  (e.g., retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.)**

    Plaintiff:

    Plaintiff has notified all persons under its custody or control who may have responsive information of their preservation obligations.

    Plaintiff has sent Defendant a preservation notice and Defendant has acknowledged his preservation obligations. The parties continue to work on finding an agreeable electronic vendor to image preserved devices.

    Defendant:

    Defendant has notified all persons acting under his control who may have responsive information related to the allegations contained in the Complaint of their preservation obligations.

    Defendant has received preservation notifications from Plaintiff as well as his own counsel and has acknowledged his preservation obligations.

    **(b)**    **State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications.**

    The parties do not believe such an agreement is necessary at this time.

**IV.    Collection**

    **(a)**    **State the extent to which the parties have agreed on the scope of documents to be collected (e.g., custodians and files/folders, servers, databases) for search and review and agreement on methods of collection.**

    Plaintiff:

    Plaintiff will collect responsive documents from the following Shopnomix custodians: Colin Jeavons, Geoffrey Griggs, Dan Tame, and Jeff Segall.

3

Plaintiff anticipates that responsive documents will be collected from relevant custodians' Shopnomix email accounts and Shopnomix electronic devices, as well as Shopnomix servers and cloud-based services, such as Google accounts, regularly used by these custodians. Collection will be via a method that preserves document metadata.

Defendant:

Defendant will collect responsive documents from the following custodians: Vinay Ganti.

Defendant expects that responsive documents will be collected from Vinay Ganti's email accounts, his electronic devices, as well as any servers and/or cloud based services.

**(b)** **Source(s) of Electronically Stored Information. The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information [e.g., email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.]:**

See IV(a).

**(c)** **Custodians/Databases. The parties have agreed that data will be collected from the following custodians/databases for review:**

See IV(a).

**V.** **Search and Review**

**(a)** **The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used, which may include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc. To the extent the parties have reached agreement as to search and review methods, provide details below:**

The parties may use keyword searching, machine learning, and TAR tools.

The parties shall meet and confer should search and review of any uncommon file types (beyond PDF, DOC/DOCX, PPT/PPTX, XLS/XLSX, and common email message formats) be required.

## VI.    Production

(a)    **Limitations on Production.**  The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) date ranges for which potentially relevant data will be drawn; (iii) timing of productions (including phased discovery or rolling productions); (iv) prioritization of review; and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:

> See IV(a) above.

> The parties further agree that no documents earlier than July 20, 2022 (Ganti's first date of employment with Shopnomix) need be produced. The parties agree to make rolling productions.

(b)    **Form(s) of Production and Metadata to be produced:**

    **(1) The parties have readied the following agreements regarding the form(s) of productions and metadata fields to be produced:**

| Field Name | Description | Example |
|---|---|---|
| BegDoc | The beginning Bates number of this document | ABC00000001 |
| EndDoc | The last Bates number of this document | ABC00000010 |
| BegAttach | The beginning Bates number of the document family | ABC00000001 |
| EndAttach | The last Bates number of the entire document family | ABC00000027 |
| All Custodian | All custodians to whom the document is associated | John Doe; Mary Smith; Michael Jones |
| RecordType | Type of electronic record | Email, Attachment, Electronic File |
| FilePath | Original File Path Location on local computer or email folder | Documents/Litigation or /Custodian/Custodian@client.com.pst/Inbox/custodian@client.com/Inbox |
| From | Author of the e-mail message. | Mary.Smith@hotmail.com |
| To | Main recipient(s) of the e-mail message, by email address. | JohnDoe@gmail.com |

| CC | Recipient(s) of "Carbon Copies" of the e-mail message. | Michael123@yahoo.com |
|---|---|---|
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | helpdesk@omnivere.com |
| EmailMessageID | Unique International Email Message ID | <d0f7dff1a3a14ea9989e0afa4a513c46@US-EX-MUL-002.Dorsey.com> |
| Subject | Subject of the e-mail message. | Fw: Urgent |
| DateSent | Date when the email was sent. The date is formatted in US format: mm/dd/yyyy | 2/24/2007 |
| TimeSent | Time when the email was sent. The time is formatted in US format: hh:mm:ss | 11:20:30 |
| DateReceived | Date message received. The date is formatted in US format: mm/dd/yyyy | 2/24/2007 |
| TimeReceived | Time message received. The time is formatted in US format: hh:mm:ss | 11:20:33 |
| FileName | Original filename of native file. Contains subject of email message for email records. | Real estate holdings.xlsx |
| FileExtension | File extension of native file. | .msg, .pst, .xls |
| FileSize | Size of native file, in bytes | 2546683 |
| DateCreated | Date when the file was created. The date is formatted in US format: mm/dd/yyyy | 2/24/2007 |
| TimeCreated | Time file was created. The time is formatted in US format: hh:mm:ss | 11:20:33 |
| DateModified | Date when the file was last modified. The date is formatted in US format: mm/dd/yyyy | 3/3/2019 |
| TimeModified | Time file was modified. The time is formatted in US format: hh:mm:ss | 11:20:33 |
| Author | Document author from metadata. | Barb Wire |
| MD5Hash | Unique identifier, similar to a fingerprint, extracted from all files. | D564668821C34200FF3E32C9BFDCCC80 |
| Textlink | Path to the extracted text for the document, for mapping. | Text\EFXAA00000001.txt |

| NativeLink | Path to the produced native file version (if applicable), for mapping. | Natives\001\ABC00001.xls |
|---|---|---|
| Confidentiality | Confidential designation | Confidential; Attorney's Eyes Only |
| Redacted | Populated with YES when a document is redacted, or NO when it is not redacted. | YES |

**(2) Please specify any exceptions to the form(s) of production indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):**

- Native ESI and paper shall be converted to black and white 300 dpi TIFF format image files with Group IV compression and one TIFF file per page. Upon written request, a producing party shall produce color images for selected documents provided the volume of documents selected for color production is reasonable. Documents produced in color shall be produced as JPEG images, 200 dpi or higher and 24-bit color depth. Each color document image file shall be named with the unique Bates Number of that page followed by the file extension "JPG";

- For documents whose native format is a spreadsheet, audio file, or video file, the original native files should be produced in addition to a single page TIFF placeholder for each document. The placeholder should be endorsed with "Native Format Document," and endorsed with the Bates number assigned to that document. The produced native file should be named with the Bates number assigned to that document. Any confidentiality or other designations stamped on the placeholder for such a document shall apply to the entire native file and its contents;

- Each image file shall be named with its unique Bates number and branded with the Bates number and confidentiality designation (if any) on the face of the image in a location that does not cover up any of the document's original text or images;

- One text file per document which contains searchable text for the document shall be provided for all ESI and scanned paper documents. Extracted full text shall be provided for ESI, and OCR text shall be provided for scanned paper. OCR generated text should only be used for ESI if extracted text is not available or if

7

the document has been redacted. Text files shall be named with the beginning Bates number of the corresponding document and a path to the text file within the production should be provided in the data load file;

- An image identification file shall be provided containing a row of information for every image included in the production. The format of the file should be industry standard IPRO format (LFP), Concordance Image format (OPT) or other delimited file format using common ASCII (American Standard Code for Information Interchange) characters for field identification that includes one row of information for each image with fields for image Bates number, relative path to the image, image filename, page number, and document start identifier to designate the first page of a document;

- All document information and metadata for each document shall be produced in a delimited data load file with one row for each document produced and shall include the document information and metadata identified in the table below to the extent it is available. The format of the file shall be industry standard Concordance DAT file format or a delimited text file that uses ASCII character delimiters as follows: Field Delimiter = "¶"ASCII (020), Text Quote = "þ" ASCII (254), Multi-Entry = ";" ASCII (059).

**(3) Methods to expedite review.  The parties have discussed and agree to the following (e.g., de-deduplication, email threading, etc.)**

**Deduplication.** The parties will make reasonable efforts to de-duplicate Electronic Documents globally prior to production in a manner that does not break up document families (such as emails and attachments), but the original ESI shall be preserved.  For any document that is de-duplicated, the Producing Party shall provide metadata fields identifying all custodians possessing the document, and the file path for every version of the document.

**Email Threading.**  The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies.

**(4) Privileged Material.**

**(i)      Identification.  The parties have agreed to the following method(s) for the identification (e.g., form of logs, acceptability of**

8

**categorical logs for certain categories of communications, production of metadata log in lieu of or in advance of more limited document by document log, categories of documents that need not be logged, disclosure of number of documents withheld pursuant to certain privileges in lieu of document by document log), and the redaction of privileged documents:**

The obligation to provide a log of privileged or work product materials presumptively shall not apply to:

- Communications between a Party and its Outside or In-House Counsel;
- Attorney work product created by Outside or In-House Counsel for the Parties;
- Internal communications within Outside or In-House Counsel for the Parties;
- Communications between a Party or its Outside or In-House Counsel and any expert or consultant retained for, or consulted with, regarding this litigation or any issues related to the issues in this litigation; and
- Documents created on or after the filing of the Complaint in this Action.

The Parties agree that, except as provided herein regarding presumptively privileged documents and ESI, they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection in an efficient manner. For documents and ESI that have been withheld as privileged, the withholding or redacting Party shall provide a privilege log of such documents and ESI, providing the following objective metadata to the extent reasonably available: date, author(s), custodian(s), recipient(s), file type, and filename/subject (to the extent they do not reveal protected content).

In addition, the withholding or redacting Party shall also indicate for each document on their privilege log the privilege being asserted (e.g., "ACP" for attorney-client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed); a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the clam of privilege or immunity. The Producing Party may include only a single privilege log entry for multiple email messages in the same email thread to the extent such messages are contained in a single "inclusive" email thread and subject to the same claim of privilege.

The parties agree that privilege logs will be produced within 30 days of document production being substantially complete, unless otherwise agreed.

**(ii)    Inadvertent Production / Claw-Back Agreements.**

Pursuant to Fed R. Civ. Proc. 26(b)(5) and F.R.E. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to F.R.E. 502(d), etc.) (the parties are referred to the Rule 502 order in Judge Parker's form confidentiality order):

The parties' proposed protective order includes the Court's model clawback provision.

**(iii)    The parties have discussed a 502(d) Order.**

Yes. The parties' proposed protective order includes the Court's model Rule 502(d) provision.

**The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.**

**(5) Cost of Production.  The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information.  The factors and components underlying these costs are estimated as follows:**

**(iv)    Costs:**

Plaintiff:

The costs of production to Plaintiff are not fully known at this time but are estimated to exceed $25,000.

Defendant:

The costs of production to Defendant is not fully known at this time but are estimated to be approximately $20,000.

**(v)    Cost Allocation.  The parties have considered cost-shifting or cost- sharing and have reached the following agreements, if any:**

10

Plaintiff will pay the cost of forensic imaging of Ganti's devices.

**(vi)    Cost Savings.  The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:**

None at this time.

**The preceding constitutes the agreement(s) reached between the parties to certain matters concerning electronic discovery as of this date.  Counsel certify that in connection with preparation of this ESI Plan and [Proposed] Order they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.**

**Party:** Shopnomix, LLC                    **By:** /s/ *Luke Cass*

**Party:** Vinay Ganti                            **By:** /s/ *Paul A. Carruthers*

**DATED:** March 3              , 2026           **SO ORDERED:**

KATHERINE H. PARKER
UNITED STATES MAGISTRATE JUDGE

11